# WALLACE

## v.

## TURK.

*(Supreme Court of Appeals of Virginia, Nov. 9, 1875.)*

### Execution—Injunction—Case at Bar.

In 1858, Roudolph Turk recovered judgment on a forthcoming bond, against Samuel D. Wallace and his sureties for the penalty of the bond, to be discharged by the payment of $377.26 with interest, and had execution issued thereon and placed in the hands of the deputy sheriff; and in 1871, he caused a new execution to be issued on the judgment. To the enforcement of this execution Samuel Wallace obtained an injunction, on the ground that since its recovery the judgment had by the dealings between the parties been satisfied. Such dealings extended through twelve years and during that time Samuel Wallace made several payments intending that they should be applied to the satisfaction of this judgment. At the time these transactions took place, Turk was sheriff of Augusta county, and as such had at various times in his hands claims against Wallace for collection, for the satisfaction of which Wallace was accustomed from time to time to make payments to Turk, and to take receipts (which receipts were destroyed during the war) for the same, and at different times he would give Turk his negotiable notes, the proceeds of which when collected he was to account for on settlement: *held*:

### Same—Same—Perpetuated.

That from the course of the dealings of the parties it was evident that the judgment had been satisfied and that the injunction restraining its execution should be perpetuated.

The facts are more fully stated in the opinion.

Appeal from circuit court of Augusta county.

Bill in equity asking for an injunction restraining the

appellee from the execution of a judgment against the appellant.    Injunction perpetuated.

*Sheriff & Bumgardner*, for appellant.

*Geo. M. Cochran*, for appellee.

STAPLES, J., delivered the opinion of the court.

This suit was brought to enjoin the execution of a judgment by default of the county court of Augusta, in favor of Roudolph Turk, the appellee, against Samuel D. Wallace and his sureties, which was rendered at the March term, 1858, of said court on a protested negotiable note, dated May 7th, 1857, and for an account and general relief.

The bill sets forth different grounds for relief against the judgment.    First, it charges that there was no consideration for said negotiable note.    That the note having been delivered to said Turk, for the purpose of being discounted, to raise the means to meet claims in said Turk's hands, against complainant, was never discounted, and consequently is not chargeable to complainant, unless the said Turk since the delivery of said note to him, has assumed liabilities for complainant which would entitle him to the benefit of the said note and of the judgment recovered thereon.    And he calls on him for a discovery of the consideration of said note, and for the production of proper evidence to show that it became his property by reason of advances made for complainant, after it was delivered for discount as aforesaid.

This allegation seems to be made, rather upon the mode of transacting business between them, as before represented in the bill, than upon any distinct memory of complainant of this particular transaction.    He alleges that at the time these transactions took place, the said Turk was the sheriff of Augusta county, and as such had at various times in his hands claims against him for collection, for the satisfaction

of which, complainant was accustomed from time to time, to make payments to Turk, and to take receipts for the same, and at different times he would give Turk his negotiable notes, the proceeds of which, when collected, he was to account for on settlement.  And he further alleges that during the war, his house was plundered by the Northern troops, who scattered and destroyed many of his papers, and in this way many vouchers and receipts of said Turk were destroyed, and he is deprived thereby of the means of explaining many of his business transactions, and "is now compelled in great measure, to rely on a discovery by said Turk, in connection with such evidence as still remains at his command, for the purpose of establishing, by means of a proper settlement of accounts and application of credits, that the said Roudolph Turk has no equitable right to enforce payment of the amount" of said execution.

It appears that from 1850 to 1857, and for several years after, complainant had numerous transactions with the defendant, first as constable of the district in which complainant resided and then as sheriff of the county, and that many claims against the plaintiff were during that period in the hands of defendant for collection.  And the bill further alleges that the business relations between complainant and defendant were not only friendly but confidential on complainant's part, and "that his payments and transfers were general and subject to subsequent settlement and adjustment between the parties," etc.

The answer of the defendant is positive and responsive in part to the allegation as to their mode of transacting business.  He says : "Your respondent had executions in his hands against complainant, but never was accustomed to take endorsed negotiable notes, the proceeds of which when collected, to be accounted for to said complainant.  *No such transaction or mode* of dealing ever existed between respondent and complainant," etc.  But the bill instances

one such transaction and exhibits the note, which was not discounted, and therefore returned to complainant. But the answer does not deny the allegation that the payments and transfers by the complainant to him, in satisfaction of the claims in his hands against him, *"were general and subject to subsequent settlement and adjustment."* He could not have done so, because the settlements which he made with the complainant, which are proved to be in his handwriting, and are signed by him, and embrace their transactions from June, 1853, to March 31st, 1855, fully confirm this allegation of the bill. (See p. 13 of record.)

The answer is also responsive to the main allegation of the bill, as to the first distinct ground of defence, to wit, as to the consideration of the note, which also calls for a disclosure, and is as follows : "Respondent frequently settled with complainant, and took his negotiable note for the amount *due* respondent, and the note referred to was executed for the amount called for in said note (the note on which the judgment in question was rendered), that being the sum due respondent at that date, 7th March, 1857." He is evidently mistaken as to the month. The note is dated May 7th, 1857. This response claims that the note was given, as supposed and alleged by complainant, for the purpose of raising money to pay claims in Turk's hands against him, and it affirms that it was given on a settlement of accounts between them for the amount due the defendant at the date of the note, and it is responsive to the call made by the bill for a disclosure. The answer being responsive to the bill, asking for a disclosure, and negativing the allegation, and there being no proof supporting the allegation, the answer must be taken to be true, not only as to its negation, but also as to its affirmative matter, in response to this allegation of the bill, and establishes this fact, that on the settlement of the accounts between them up to the 7th of May, 1857, there was *due* the defendant $336.00, for which the note was given. There-

fore the plaintiff fails to sustain the first ground upon which he sought relief against the judgment and execution.

But he rests his case on a second ground. He "charges that he has made payments and transfers of paper and claims to said Turk, *since* said judgment on said delivery bond, to a much larger amount than that of the executions and claims for collection, held by said Turk against (him) your orator, including said judgment." It is assumed that these two defences are inconsistent, and incompatible. And a reflection is cast upon the complainant for relying upon two grounds of defence in his sworn bill, so incompatible. I do not think that these two grounds of defence are at all inconsistent or contradictory of each other. It might be true that the negotiable note was given to raise money to pay off claims against complainant which were in the hands of the defendant, and no money having been received on it, because it was not discounted, there was a failure in the consideration, and the complainant was entitled to a return of the note. And in that view there ought not to have been a judgment against him on the note. But I do not say that he would be entitled to relief in equity on that ground, against the judgment, if the fact were so. He ought to have made his defence at law. But the fact as alleged might be true, and it might, at the same time, be true that in the dealings and transactions between him and the defendant *since* the judgment on the note, the defendant was owing him a balance which exceeded the amount of that judgment, which, according to the general and accustomed mode of their transactions and dealings, ought to be applied to the satisfaction of said judgment. And this is his second ground of relief asked for. Both grounds of relief may be true in fact, and therefore there was no ground of disparagement to the plaintiff in making them both in his sworn bill. If the second allegation be true, is it not ground of relief in equity against the judgment?

It is against conscience, if you have an execution against me, and at my request you direct the sheriff not to press it or to hold it up and he holds it up for twelve years. And in the meantime I make large payments and transfers to you and you hold the claims against me, but upon a fair settlement, would be owing me more than the amount of your execution, which I intended and had reason to believe from our previous course of dealings for a series of years, would be applied to the satisfaction of your execution. I say you could not in good conscience under such circumstances, re-issue your execution against me and my sureties, levy it on the property of my security, and force the execution against him or me. In such case I hold equity should interpose its relief, and the fact that your debt is evidenced by a *judgment*, and my claim is matter in pais, could not make it less unconscientious in you to enforce the execution against me or my surety, when you were owing me the amount of it or more, and especially as when the payments were made by me, I had reason to believe from the course of dealings between us for years before, if you had given no pledges to that effect, that the balance due me on settlement would be applied to the satisfaction of that judgment. Such seems to have been the view taken by the judge of the circuit court, and he ordered, and I think properly ordered, an account, and the report of the master commissioner, as corrected under his direction, forms the basis of his decree, and he allows the complainant a credit on the execution of $55.10, as the balance due to him from the defendant, upon a settlement of their accounts. But he ought to have made a further correction in the master's report, or to have recommitted it, sustaining the plaintiff's third exception to it in part.

That exception is in these words: "Because, although it is conceded, large and important transactions occurred prior to October 1, 1855, the master fixed that as the day for the commencing of the accounts. We insist that this

is without sufficient reason, and that the plaintiff has been injured thereby." If the commissioner went behind the settlement of May 7th, 1857, when the note in question was given, as alleged by defendant for the *sum then due*, it is very clear that he ought to have gone back further. He ought to have gone back to the last settlement, and reviewed and restated all the transactions which were embraced in the settlement of May 7th, 1857, when the note was given for what appeared to be due. It was not proper that in the statement of the account he should go back behind the note to the 1st of October, 1855, and enter the debits against the plaintiff down to the 7th of May, 1857, the date of the note, and make no entry on the credits. It appears from the settlements up to the 31st day of March, 1855, and exhibits in the cause, that on the 2nd day of January, 1854, complainant sold to the defendant a tract of land for $2,000.00 with condition that if defendant sold it for more than that sum before the 1st of September following, he was to divide what he got over that sum with complainant, after deducting all necessary interest and cost attending the sale. He sold it for one thousand dollars more, that is for $3,000.00. Whether it was sold before the 1st of September or not does not appear ; but the deed of conveyance was not made until the 23rd of January following. If we were to go behind the settlement of May 7th, 1857, upon the statement of the account, it would have to be determined whether the plaintiff was entitled to a credit for a part of the proceeds of that sale if it had not been allowed him. It does not appear on the face of the record whether the plaintiff would, upon a reopening of the account, be entitled to such a claim or not ; but it does appear that the defendant gave him his two bonds, each for $500.00, payable severally the 1st of September, 1855 and 1856, and a lien is reserved on the land for these payments. These bonds fell due subsequent to the date of the last settlement and one of them subsequent to the first

item on commissioner's account of debts, prior to the 7th of May, 1857. It is true that the defendant relies upon the admission of the plaintiff and the endorsements on said bonds, to show that they were paid. But these endorsements were without date, and when and how they were paid does not appear. They might have been paid by the very claims of defendant which are debited to the plaintiff in this account. If this account was opened prior to the alleged settlement by defendant of May 7th, 1857, the defendant ought to have been required to have made a statement and disclosure of all the claims which came into his hands, and of all debits against the plaintiff, and of all payments or transfers made by the defendant subsequent to the settlement of 31st of March, 1855, especially in view of the mode in which they conducted their transactions as shown by the settlements of August 1st, 1854, and of March 31st, 1855, and of the fact of the loss and destruction of many of the complainant's papers, receipts, and vouchers, without fault on his part, which deprived him of the means of stating the account.

But I do not think there is anything in this record which could justify the court in going behind the settlement of May 7th, 1857, in pursuance of which the note upon which judgment was rendered was given. It was not competent for the defendant to go behind it, because he affirms in the answer that the note was given for the sum then due him upon settlement of account. Nor was it competent for the plaintiff because he has not made out a case which would allow him to go behind the note.

The error then of the commissioner was in fixing the 1st of October, 1855, for commencing the account, in going back at all behind the date of the note. What evidence is there in this record that the items debited by the commissioner to the plaintiff prior to the date of the note, amounting to $332.53½ principal, and $284.95 interest, were not taken into the account and debited to the plaintiff in the

settlement of May 7th, 1857, in order to ascertain what was then *due ?* The presumption is that they were, and there is nothing in the record to repel that presumption. And as the defendant affirms that the note on which he obtained judgment was for the amount which was due him on settlement of accounts to that date, he is estopped to go behind it and debit the plaintiff with items which had accrued prior thereto. To debit the plaintiff with them now is to require him to pay them twice. At least such is the conclusion from the presumption of law, that they were embraced in the settlement, which showed the amount then due, for which the note was given. If those items were stricken from the account there would be a balance due the plaintiff upon the transactions between the parties subsequent to the judgment, which would, I think, exceed the amount of the defendant's execution. See commissioner's report and account, page 29. If the circuit court had caused this error to be corrected and these anterior items stricken from the account, the result would have been a perpetuation of the injunction for the whole amount of the execution, if I am right in the opinion that it would show a balance due the plaintiff, exceeding the amount of the execution. This might have been done, or the court might have sustained the plaintiff's third exception and sent the case back to the commissioner, that exception pointing to the time fixed by the commissioner for commencing the account, as erroneous. And whilst I think the second exception ought also to have been sustained, and the commissioner been directed to enquire and report what other executions or claims A. S. Turk held against the plaintiff, and according to the course which the defendant and the plaintiff had conducted their transactions and settled their previous accounts, the plaintiff ought to have been also credited by the money paid by King on his orders to his deputy and brother A. S. Turk of three or four hundred dollars and to have been debited with the claims

which A. S. Turk held against him.    That item is not allowed
as a credit to Wallace in the account of the commissioner.
I am not satisfied from the case made by the record, that there
was anything due the appellee upon the judgment when he
issued his second execution.    I am apprehensive that injus-
tice will be done the appellant, in the present aspect of the
case, to allow the appellee to enforce his execution, and I
am clearly of opinion that it was error in the commissioner
to go behind the date of the note upon which the judgment
was obtained, according to the affirmation of the appellee
himself, to enter debits against the appellant, and that the
appellant is entitled to the credits which he allowed him at
least, and also for the $100.00 and interest which he disal-
lowed but which was disallowed by the court.    I am there-
fore of opinion that the decree should be reversed and
injunction perpetuated or the cause sent back to the com-
missioner to restate and settle the account upon the prin-
ciples herein declared, and to that end reverse and remand
the cause.